In re SANDERSON.

HILL v. HORSKINS.

(District Court, D. Vermont. January 22, 1907.)

PRINCIPAL AND SURETY—PLEDGE TO SECURE DEBT OF ANOTHER—SURRENDER OF OTHER SECURITY BY CREDITOR.

A creditor, who held as collateral security property of his debtor and also property pledged by another, by his surrender of his debtor's property without the consent of the other pledgor, forfeited his right to retain the property pledged by the latter.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and Surety, § 244.]

See 149 Fed. 273.

C. G. Austin & Sons, for petitioner.
F. C. Smith and Lee S. Tillotson, for petitionee.

MARTIN, District Judge. The petitioner claims that he held a certain policy of insurance, originally issued to the bankrupt, Lynn J. Sanderson, which was first transferred by him to his father, J. B. Sanderson, and subsequently the two Sandersons aforesaid joined in the transfer to the petitioner. He further claims that this transfer of

said policy to him was for a collateral security, and that he held said policy as a collateral security until the petitionee got possession of it through duress, etc.

The matter was referred to Referee Mott, of Franklin county, who found that the original transfer from the bankrupt to his father was based upon a collusive and unlawful contract, and void; also that said policy was transferred to the petitioner to secure any indebtedness that then existed, or might thereafter exist, from Lynn J. Sanderson, the bankrupt, to the petitioner; and that, at the time of the surrender of the policy to the petitionee, there was no indebtedness for which the policy could be holden by the petitioner.

The petitioner prays the court to review and reverse these findings.

From an examination of all the evidence produced on hearing, I am not inclined to concur in the referee's finding as to the original transfer from the bankrupt to his father, or as to the effect of a want of due notice of the transfer to the company issuing the policy; but I do not feel justified in reversing his finding as to the purpose for which it was assigned by the two Sandersons jointly to the petitioner. Assuming his finding upon this subject to be correct, the petitioner held this policy as collateral security for any indebtedness of Lynn J., the bankrupt, to the petitioner, or of Lynn J., jointly with his father, to the petitioner, or upon which the petitioner was holden as surety signer for the said Lynn J., or Lynn J., jointly with his father, but not for the father, J. B. Sanderson, alone.

I find from the evidence that the original transfer from the bankrupt to his father, J. B. Sanderson, under the circumstances, did not constitute a sale of the policy. At most, the father held it as collateral security for about $100, and as a lien for one premium of $75 paid subsequent to the transfer; that the equity above that was in the son, the bankrupt, and hence the said Lynn J. held the legal title to said policy.

I further find that J. B. Sanderson placed with the petitioner, as collateral security for his individual obligations, two other policies of insurance, which were life policies issued to the said J. B. Sanderson and were his sole property, and that the petitioner returned these two policies and surrendered this collateral but a short time before said Lynn J. Sanderson was petitioned into bankruptcy.

The surrender of these collaterals, that were the sole property of the said J. B. Sanderson, released this policy upon the life of Lynn J. Sanderson, the bankrupt, as collateral security for the personal indebtedness of the said J. B. Sanderson, even though the terms of the original transfer of the policy in question were broad enough to include it as a collateral for the individual indebtedness of the said J. B. Sanderson to the petitioner, as the legal title to the policy in question was all the time in Lynn J., the bankrupt.

The surrender of collateral that was the sole property of J. B. Sanderson forfeited the petitioner's right to hold collateral of Lynn J., the bankrupt, for the payment of J. B. Sanderson's obligations; there being no evidence that the said Lynn J. consented to the surrender of the said policies of J. B. Sanderson, nor that the policies so surrendered were not ample security. Hurd v. Spencer, 40 Vt. 581; Fitch. Savings

Bank v. Torrey, 134 Mass. 239; Guild v. Butler, 127 Mass. 386; Am. & Eng. Cyclopedia of Law, vol. 27, 516.

The referee finds that at the time of the surrender of this policy by the petitioner to the petitionee there was no indebtedness of Lynn J. Sanderson, the bankrupt, to the petitioner. This finding I do not feel justified in reversing, and therefore it is affirmed. If the petitioner ever had any right to hold this policy as collateral security for the indebtedness of J. B. Sanderson, he forfeited that right by the surrender of the J. B. Sanderson collateral, and, there being no indebtedness of Lynn J. Sanderson to him, he had no further interest in this policy. Wherefore the prayer of this petition is denied.